**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3157
_____

LeJeune G., individually and on behalf of T.T.,
Appellant

v.

Khepera Charter School; Pennsylvania Secretary of Education;
Commonwealth of Pennsylvania; Pennsylvania Department of Education

_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(District Court No.:  2-17-cv-04965)
District Judge:  Honorable Wendy Beetlestone
_____

Argued on July 1, 2019

(Opinion Filed: July 25, 2019)

Before:  McKEE, PORTER and RENDELL, Circuit Judges

David J. Berney   **[ARGUED]**
Kevin A. Golembiewski
1628 John F. Kennedy Boulevard
Suite 1000
8 Penn Center Plaza
Philadelphia, PA   19103

Counsel for Appellant

Claudia M. Tesoro   **[ARGUED]**
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA   19103

        Counsel for Appellees Pennsylvania Secretary of Education
        and Pennsylvania Department of Education


Yvonne M. Husic
2215 Forest Hills Drive
Suite 35
Harrisburg, PA  17112

        Counsel for Amicus Appellant National Association of Private
        Special Education Centers; Springtime School; A Step Up
        Academy


Catherine M. Reisman
Reisman Carolla Gran & Zuba
19 Chestnut Street
Haddonfield, NJ   08033

        Counsel for Amicus Appellant Council of Parent Attorneys
        and Advocates; Education Law Center

## O P I N I O N*

**RENDELL**, <u>Circuit Judge</u>:

Appellant challenges the District Court's order granting in part and denying in part her motion for summary judgment against Appellee and granting in part and denying in part Appellee's motion for summary judgment against Appellant. Because the only issue raised on appeal was not raised below, we conclude that it has been waived and will affirm the District Court's order.

### I.[1]

### A.

The Individuals with Disabilities Education Act (the "IDEA") requires that every child with a disability receive a "free appropriate public education" ("FAPE"), 20 U.S.C. § 1412(a)(1)(A), which is defined as "special education and related services that," among other things, "have been provided at public expense, under public supervision and direction, and without charge," 20 U.S.C. § 1401(9)(A). To ensure that a FAPE is provided to all disabled children, the IDEA provides that federal funding be distributed to

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because we write for the parties, who are familiar with the facts and the procedural posture to date, we only include what is necessary to explain our decision.

State educational agencies ("SEAs"), which, in turn, allocate those funds to local educational agencies ("LEAs"). *See* 20 U.S.C. § 1411.

LEAs are charged with directly providing or arranging for third-party provision of a FAPE, *see, e.g.*, 20 U.S.C. § 1414; however, SEAs "retain[] primary responsibility for ensuring compliance with the IDEA and for administering educational programs for disabled children," *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of Newark*, 344 F.3d 335, 340 (3d Cir. 2003); *see also* 20 U.S.C. § 1412(a)(11)(A) (holding the SEA "responsible for ensuring that . . . the requirements of [the IDEA] are met" and "all educational programs . . . meet the educational standards of the [SEA]"). When an LEA "is unable to establish and maintain programs of free appropriate public education that meet the requirements of [the IDEA]," the SEA is required to "use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities." 20 U.S.C. § 1413(g)(1).

Anticipating that disagreements will sometimes arise between parents or guardians of children with disabilities and their LEAs, the IDEA requires that SEAs establish specific procedural safeguards to facilitate resolution. *See generally* 20 U.S.C. § 1415. For example, SEAs must afford parents and guardians the opportunity to file a due process complaint, § 1415(b)(7), and, where such a complaint is filed, provide an impartial due process hearing, § 1415(f)(1)(A). Before a hearing occurs, however, the IDEA mandates that the two parties meet to attempt to resolve the complaint. § 1415(f)(1)(B)(i). Where such a meeting is successful, the IDEA directs the parties to

4

"execute a legally binding agreement that is . . . enforceable in any State court of competent jurisdiction or in a district court of the United States" (a "resolution agreement"). § 1415(f)(1)(B)(iii).

B.

T.T. was identified as a child with a specific learning disability, Attention Deficit Hyperactivity Disorder, and Oppositional Defiant Disorder, and, therefore, must be provided with a FAPE pursuant to the IDEA. LeJeune G., T.T.'s guardian, filed a due process complaint against T.T.'s LEA, Khepera Charter School, alleging that Khepera denied him a FAPE from 2013 to 2015. The officer who presided over the due process hearing agreed and ordered Khepera to provide compensatory education to T.T. Khepera and LeJeune G. eventually entered into an agreement implementing the hearing officer's decision (the "Implementation Agreement").

The following year, LeJeune G. filed a second due process complaint against Khepera pursuing additional compensatory education and funding for T.T. to attend the Y.A.L.E. School ("Y.A.L.E."), a local private school for children with disabilities. Pursuant to the IDEA's required resolution mechanism, LeJeune G. and Khepera attempted to resolve the complaint prior to a due process hearing and, upon successful negotiation, executed a resolution agreement (the "Resolution Agreement") in which Khepera agreed to, among other things, pay for T.T. to attend Y.A.L.E. for the seventh grade.

T.T. attended Y.A.L.E. and, by all accounts, was provided with an appropriate education, but Khepera failed to pay all of his tuition. Although she has neither paid nor

5

been asked to pay any of the balance owed to Y.A.L.E., LeJeune G. sought direct payment to Y.A.L.E. from both Khepera and Pennsylvania's SEA, the Pennsylvania Department of Education ("PDE"); however, Khepera was and continues to be financially insolvent, and PDE refused her request. T.T. attended Y.A.L.E. through the eighth grade but was barred from returning afterwards because his tuition remained partially unpaid for both years.

LeJeune G. initiated this action against Khepera, PDE, and its Secretary, alleging in her complaint that Khepera breached both the Implementation Agreement and the Resolution Agreement. With regard to the latter breach, she specifically claimed that Khepera failed to pay T.T.'s Y.A.L.E. tuition in full and still owes $44,519.08 to the private school. She argued that these breaches amount to a violation of the IDEA and that, because Khepera is "unwilling or unable" to fulfill its obligations under the IDEA, "PDE is responsible for remedying T.T.'s denial of [a] FAPE, including honoring all of the terms of the Due Process Order as interpreted by the T.T. Implementation Agreement and the T.T. Resolution Agreement." JA 31. This is the only allegation regarding PDE's liability.

LeJeune G. moved for summary judgment against both Khepera and PDE for compensatory education funds and payment of T.T.'s Y.A.L.E. tuition. PDE filed a cross-motion for summary judgment contending that it has no liability. With regard to that issue, LeJeune G. argued that when a charter school acting as an LEA cannot or will not fulfill its obligations under a resolution agreement, the SEA "is required to step into [the LEA]'s shoes" and fulfill any unmet terms of the agreement. JA 138. In its motion,

6

PDE argued that, under such circumstances, an SEA has no duty to fulfill outstanding obligations and, instead, must only provide relief to the extent it believes necessary to provide the child with a FAPE.

The District Court granted LeJeune G.'s motion against Khepera in full and against PDE on her compensatory education claim, but it denied her motion against PDE on her claim for tuition payment to Y.A.L.E. The Court denied PDE's motion on its liability for compensatory education funds but granted it on its obligation to pay the balance of T.T.'s Y.A.L.E. tuition. In doing so, the Court first recognized that this Court has held that "an SEA is ultimately responsible for providing children with a FAPE." JA 139; *see Kruelle v. New Castle Cty. Sch. Dist.*, 642 F.2d 687, 696 (3d Cir. 1981). And, in the Eastern District of Pennsylvania, courts have generally held that an SEA can be held responsible for an LEA's refusal or inability to provide a child with a FAPE where "the school was closed or defunct." JA 140–41 (citations omitted).

Although Khepera was not closed or defunct, the District Court determined that it was nonetheless "unable" to satisfy its obligations under the IDEA, and, therefore, PDE was "required to step in to the breach." JA 143–44. The District Court reasoned, however, that "T.T.'s claim against PDE for reimbursement . . . turn[ed] on whether T.T. will be denied a FAPE if PDE does not step in to the breach." JA 146.

The District Court ultimately concluded that "T.T. will not be denied a FAPE if PDE does not reimburse YALE," so PDE was not liable for T.T.'s unpaid tuition. JA 146–47. The Court reasoned that (1) the resolution agreement explicitly stated that education at Y.A.L.E. was not "necessary" to provide T.T. with a FAPE, (2) LeJeune G.

7

agreed that she would notify Khepera if she did not believe that the arrangement was providing T.T. with a FAPE, and (3) "T.T. was not withdrawn, disenrolled, or otherwise removed from YALE as a result of Khepera's nonpayment." JA 146. The Court also acknowledged that "several courts have held that a direct payment remedy for retroactive tuition may be appropriate in certain situations," but those cases "involved an appeal of a[n] administrative proceeding" and "[u]nlike here, each of those cases alleged that a student was denied a FAPE." JA 147. LeJeune G. filed this timely appeal.

II.[2]

On appeal, Appellant does not rely on the Due Process Award, or the breach of the Implementation Agreement or the Resolution Agreement. Rather, she claims that since the statutory definition of FAPE includes the requirement that an education be "provided at public expense," 20 U.S.C. § 1401(9)(A), PDE must pay Y.A.L.E. in order to provide a FAPE.

This claim was never asserted in her complaint in the District Court.[3] Appellant would have us determine, in the first instance, whether the existence of this statutory provision permits a cause of action by a parent or guardian against the state any time an entity may not have been fully paid for the benefit provided to a student. This presents a

---

[2] The District Court exercised jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction under 28 U.S.C. § 1291. We review a district court's summary judgment order *de novo*. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).

[3] The District Court did mention "the text of the statute" in referring to the claim against PDE, *see* JA 147, but we think it was based on the allegation that PDE had to remedy Khepera's breach, not that "public expense," in and of itself, created a cause of action.

8

host of issues that were never addressed in the District Court and that were never presented in a way that the District Court could have anticipated them.

PDE asserts that the precise issue before us was waived as not raised in the District Court. On the one hand, "[i]t is well established that arguments not raised before the District Court are waived on appeal." *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (citation and internal quotation marks omitted). In *Spireas v. Commissioner of Internal Revenue*, we held that "merely raising an *issue* that encompasses the appellate argument is not enough," and "[w]hether an argument remains fair game on appeal is determined by the 'degree of particularity' with which it was raised in the trial court, and parties must do so with 'exacting specificity.'" 886 F.3d 315, 321 (3d Cir. 2018) (internal quotation marks and citation omitted) (emphasis in original).

However, "this rule is one of discretion rather than jurisdiction." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834–35 (3d Cir. 2011) (citation and internal quotation marks omitted). We have considered arguments raised for the first time on appeal in "exceptional circumstances," including where public interest would be served by consideration of the issue; where an argument is "closely related" to the arguments raised below; and where the purposes of waiver, including the judicial interests that it serves, would not be furthered by its application. *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416–17 (3d Cir. 2011).

Appellant concedes that she did not preserve her argument under *Spireas*.[4] However, she urges that the circumstances of this case are exceptional and asks us to exercise our discretion and consider the merits of her argument. We decline to do so. The concept of "public expense" implicates several issues of fact and law not developed below. *See Sharp*, 638 F.3d at 417 ("The waiver rule applies with greatest force where the timely raising of the issue would have permitted the parties to develop a factual record." (citation and internal quotation marks omitted)). First, is the requirement of provision "at public expense" a requirement separate from "without charge"? Second, does it impose on PDE an independent obligation to pay even if the parent has borne no financial burden and the child has received the education? Third, Appellant asserts that she is harmed because Y.A.L.E. will not reenroll T.T. unless the owed tuition is paid. But do we know if Y.A.L.E. will readmit T.T. if it is paid? (i.e., does she have standing, is non-payment the cause of her injury, and is the injury redressable?) Lastly, what does PDE have to do to satisfy the public expense requirement? If it paid Khepera for T.T.'s seventh grade education but Khepera failed to transfer the funds to Y.A.L.E., does PDE still have an obligation to pay Y.A.L.E.?[5] Nowhere were these questions that are implicit in the current argument made by LeJeune G. presented in the context of the litigation

---

[4] Alternatively, she contends that we should rely on the Supreme Court's more liberal standard, espoused in *Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992), but *Yee* is not a case about waiver. It considers whether to address, as part of a petition for certiorari, arguments not addressed below. Tellingly, it cautions against considering an argument such as the one before us: "Prudence . . . dictates awaiting a case in which the issue was fully litigated below, so that we will have the benefit of developed arguments on both sides and lower court opinions squarely addressing the question." *Id.* at 538.
[5] At oral argument, Appellant urged that the answer to this question is "yes."

before the District Court.  Thus, the sole argument presented on appeal has been waived, and we will not disturb the judgment of the District Court.

III.

For the foregoing reasons, we will affirm the District Court's order granting in part and denying in part Appellant's motion for summary judgment against Appellee and granting in part and denying in part Appellee's motion for summary judgment against Appellant.